UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD VAN METER,                )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    No.  4:04CV822 CEJ
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                 )
        Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and
1383(c)(3) for judicial review of the denial of Plaintiff's
applications for Disability Insurance Benefits under Title II of
the Social Security Act and Supplemental Security Income under
Title XVI of the Act.

## Procedural History

On November 3, 2000, plaintiff applied for Disability
Insurance Benefits and Supplemental Security Income, claiming that
he became unable to work on June 1, 2000.  (Tr. 70-72, 36-39)
Plaintiff's applications were subsequently denied.  (Tr. 58-61)
After an April 23, 2001 hearing, the Administrative Law Judge
("ALJ") determined that plaintiff was not under a disability in a
decision dated August 15, 2001.  (Tr. 13-33)  On January 2, 2002,
the Appeals Council denied plaintiff's request for review. (Tr. 3-
4)

Plaintiff filed his first complaint in this court on March 4,

2002.  On March 20, 2003, the case was remanded to the Commissioner, with the directive that the ALJ obtain the testimony of a vocational expert and set forth all of plaintiff's impairments in the hypothetical question.  On September 23, 2003, an ALJ held a supplemental hearing.  The ALJ issued a decision denying plaintiff's applications for benefits on April 17, 2004.  (Tr. 229-235) The plaintiff did not file any exceptions with the Appeals Council.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

The evidence before the ALJ pertaining to the first hearing is thoroughly set forth in the Memorandum and Order dated March 20, 2003.  (Tr. 255-256)  The recitation of that evidence is incorporated here by reference.

The ALJ held a supplemental hearing on September 23, 2003, during which plaintiff appeared with counsel.  A vocational expert, James Isreal, also attended.  At the time of the hearing, plaintiff was 46 years old, measured 5 feet 8 inches, and weighed 344 pounds.  Plaintiff lived with his girlfriend.  He did not finish high school, but he received his GED.  Plaintiff testified that he had not worked since his first hearing.  He stated that his condition was basically the same but that the pain had worsened.  He had gained about 24 pounds since the first hearing.

Plaintiff testified that he had Type II Diabetes, for which he

2

took medication. As a result of the diabetes, plaintiff experienced numbness in his feet and hands. He took Neurontin for the numbness. In addition, plaintiff stated that it was painful for him to stand for long periods of time because it felt as though he were standing on needles. Plaintiff opined that he could stand for 15 to 30 minutes before experiencing the needle-like sensation in his feet. He further stated that he was going to have an electrical conductivity test on his hands later in the month. Plaintiff reported problems feeling and grasping things with his hands.

Plaintiff also testified that he had been diagnosed with sleep apnea. He slept with a CPAP machine, which allowed him to sleep at night. However, he still fell asleep at odd times during the day, at least three times a day. Plaintiff stated that he had been using the CPAP machine for two years and that his condition was improved. However, he continued to have sleeping episodes during the day.

Plaintiff testified that he used a cane because he was unable to get up and down due to pain. He stated that he was afraid of falling again. He reported that fell when getting out of a vehicle because his knee gave out and he didn't have his cane with him. Plaintiff felt the cane helped him to get up and to remain standing.

Plaintiff also testified to suffering from asthma. He stated

that he constantly became short of breath. Changes in the atmosphere, the weather, his weight, excitement, and stress exacerbated his breathing problems.

Plaintiff also experienced chest pains. Testing revealed a mitral valve prolapse. Plaintiff stated that his blood pressure was under control as a result of prescription medication. Further, in February 2002, plaintiff had surgery for an umbilical hernia. Plaintiff testified that he had another hernia along side the old one and that doctors told him to refrain from lifting heavy objects. He opined that he could lift a gallon of milk or 11 pounds.

Plaintiff testified that he had right shoulder problems, which the doctor diagnosed as arthritis. Because Celebrex did not work, doctors informed plaintiff that he could either live with the pain or receive cortisone shots. At the time of the hearing, plaintiff had not yet taken the cortisone shots. Plaintiff was able to lift his right arm a little above the shoulder before he felt pain and tension. He could lift his right arm in front of him about three-quarters of the way up before it pulled and hurt. Plaintiff also had problems with his lower back due to deteriorating discs in his lower back. It caused problems when he sat, and required him to constantly get up and move around. Plaintiff opined that he could sit for 15 to 25 minutes at a time.

With regard to activities, plaintiff testified that he did

very little housework.  He loaded the dishwasher and vacuumed the carpet.  He only did a little bit at a time and rested when he was tired.  Plaintiff hired someone to mow his lawn.  Plaintiff's girlfriend did most of the driving because he did not feel he had the ability to drive long distances safely.  Specifically, he was afraid he would fall asleep at the wheel.

Plaintiff's typical day consisted of getting up around 11:30 and going to bed before his girlfriend returned from work.  In the afternoon, he did a little housework, watched television, and read. He visited friends after he medicated himself.  Plaintiff walked about four houses down to see one friend.  He was able to take care of his personal needs, but he had problems in the morning. Sometimes his girlfriend dressed him.

Plaintiff further testified that he still had a commercial driver's license.  He had not driven in 5 years, but he continued to renew his license.  Plaintiff stated that he retired from his job as a police officer.  He did not collect early retirement benefits.  After that, he drove a truck for UPS.  Plaintiff worked from 1997 to 2000 as a part-time satellite technician for a cable company.  His duties included installing and servicing satellites. Plaintiff made anywhere from $300 to $1,000 a week, and he testified that he filed tax returns.  Plaintiff's hobby was building remote control model airplanes.  However, he had not built any over the past two years because he was unable to sit for long

periods of time or work with his hands.  Plaintiff did not cook, nor did he wash clothes because he was unable to use the basement stairs to get to the laundry.

Plaintiff opined that he could walk a distance of two blocks. Although plaintiff's doctor recommended that he exercise daily, plaintiff stated that he could not walk outside due to hilly terrain.  He walked slowly for five minutes on the treadmill instead.  Plaintiff was on a low cholesterol diet.  At one time he counted calories but no longer did so.  Plaintiff had not lifted weights since high school, and he only occasionally lifted heavy objects when he was employed.

James Isreal, the vocational expert (VE), testified that the exertional and skill levels of plaintiff's past relevant work included the heavy range, semi-skilled range as a satellite technician; semi-skilled and medium to heavy range as a truck driver; and skilled, light to medium range as a police officer. Plaintiff possessed some transferability of skills as a police officer to a police dispatcher.  This job was a strictly sedentary job.

The ALJ posed a hypothetical question, asking the VE to assume and individual of the same age, education, and job experience as plaintiff.  The VE was asked to further assume that the individual had the following limitations: inability to lift more than 10 pounds, walk more than two blocks, or stand up for more than 30

minutes at a time.  The VE answered that such an individual could perform the job of dispatcher, as the range of sedentary was intact.  Other jobs included order clerks, factory assemblers, cashier jobs, and light clerical.  There was a wide range of such sedentary job and a large number in the national economy.

Plaintiff's attorney also questioned the VE, adding the limitation of sleep apnea, which caused a person to fall asleep uncontrollably or unexpectedly up to three times daily.  The VE answered that the person could not work with that type of interruption.  Additionally, if a person had difficulty with manipulation and use of the upper extremities, as described by plaintiff, such problems would be work disabling.

## **Medical Evidence**

The medical evidence as set forth in the Memorandum and Order of March 20, 2005 is incorporated by reference here.

Plaintiff received care at St. Louis ConnectCare from May 31, 2001 to June 31, 2002.  He complained of numbness and weakness in his hands, as well as numbness and pain in his feet.  Plaintiff reported that he slept through the night with the CPAP machine.

From November 26, 2001 through June 12, 2003, plaintiff received follow-up care through the Saint Louis County Health Department for his medical conditions, primarily for his diabetes.  In October, 2001, plaintiff reported that his downfall was binging on ice cream or cake.  The diabetes educator instructed plaintiff

7

on proper diet and exercise. On November 19, 2001, plaintiff admitted eating more lately and baking cakes. Plaintiff's diabetes was uncontrolled. The examining physician recommended a new medication regimen and instructed plaintiff on proper foot care. In addition, the physician recommended a lower fat diet; the elimination of regular soda; an increase in water; limited in portion sizes and sweets; less coffee creamer; and increased exercise. Because it was noted that plaintiff was using his inhaler improperly, the physician gave plaintiff instructions on proper use. A chest x-ray taken on November 21, 2001 produced negative results.

In December 2001, plaintiff reported that his legs were giving out and that he experienced numbness in his feet. In addition, he complained of back and knee pain. The physician recommended heat and Celebrex. Subsequent visits were primarily for refills of pain medication. On April 12, 2002, plaintiff reported decreased pain in his feet. However, he experienced headaches two to three times a month and he was having trouble sleeping.

On June 21, 2002, plaintiff reported that he fell on his right leg, which resulted in edema and swelling. By July 2002, the redness and swelling had decreased remarkably. Plaintiff reported doing fine. Between July 2002 and October 2002, plaintiff returned for follow-up appointments and prescription refills. On November 6, 2002, plaintiff saw a diabetic nutritionist who noted that

plaintiff's weight had increased as a result of eating more sweets and fried foods. By December 18, 2002, plaintiff's hypertension and diabetes were well-controlled, and his asthma was stable. On April 10, 2003, plaintiff complained of shoulder pain. The physician noted that plaintiff had undergone a cardiac catheterization procedure, which he passed with flying colors. In addition, plaintiff was to increase his exercise. April 17, 2003 x-rays of plaintiff's right shoulder were negative. On April 21, 2003, plaintiff reported continued pain in his right shoulder for the past three weeks. He stated that the pain increased with movement. However, there was no acute trauma or injury, and plaintiff had good range of motion and strength with some pain. The physician recommended ice and continued use of Vioxx.

In February 2003, plaintiff underwent hernia repair surgery. Preoperative notes reveal that plaintiff was functional with self care. Plaintiff reported no ongoing pain problems. The surgery was successful, and plaintiff was discharged with post-operative instructions.

On June 14, 2002, plaintiff went to the DePaul Health Center Emergency Department after injuring his right leg. He reported mild pain without weakness, tingling numbness, or pain on weight-bearing. There was mild tenderness but no fracture. Examination of the extremities and back were otherwise normal. Dr. Nadindla Chennaiah assessed contusion of the lower extremity and recommended

that plaintiff continue his medications and follow up with his doctor in five days if not well.

Dr. Fatima Khan examined plaintiff at the DePaul Health Center for complaints of chest pain, shortness of breath, and flushing on December 15, 2002. Review of systems was unremarkable but for plaintiff's present complaints. The musculoskeletal exam was fairly negative. Despite a prior diagnosis of congestive heart failure, Dr. Kahn noted that plaintiff's symptoms had resolved. Dr. Kahn advised that plaintiff follow up with a cardiologist. On December 20, 2002, plaintiff underwent an arteriogram. On November 10, 2003 EMG testing revealed relatively normal findings but for distal symmetric sensory neuropathy and right carpal tunnel syndrome.

## The ALJ's Determination

In a decision dated April 17, 2004, the ALJ determined that plaintiff was insured for a Period of Disability and Disability Insurance Benefits on his alleged onset date, June 1, 2000, but was not insured after December 31, 2001. He had not engaged in substantial gainful activity since June 1, 2000. Plaintiff satisfied the requirement for a severe impairment, being more than minimally limited by neuropathy, obesity, and osteoarthritis. However, his condition did not meet or medically equal a listing. In addition, the ALJ determined that plaintiff's allegations were not credible. He had the residual functional capacity (RFC) to

10

perform sedentary work, except he could only walk two blocks at a time and stand for intervals of thirty minutes. While plaintiff was unable to perform his past relevant work, given his younger age, high school equivalent education, and vocational expert testimony, the ALJ concluded that plaintiff had been able to perform work existing in significant numbers in the national economy since his alleged onset date and thus was not disabled.

Specifically, the ALJ noted the lack of corroborating objective medical evidence to support plaintiff's allegations of right shoulder arthritis and a recurrence of hernia. The ALJ pointed to normal right shoulder x-rays, good range of motion, and good strength. Further, plaintiff's high blood pressure and sleep apnea had not been severe, as they were controlled by medication and a CPAP device, respectively. Only when plaintiff failed to use the CPAP device did he experience daytime somnolence. In addition, plaintiff's asthma was not severe because it was controlled with medication and because plaintiff was able to work for years despite this impairment. Further, plaintiff's heart condition was resolved after treatment.

The ALJ additionally noted that the medical evidence did not support a finding of disability. Physical examinations revealed only mild degenerative changes of the knee, thoracic spine, and lumbar spine. Further, while plaintiff had a positive straight leg raise test, left-sided limp, waddling gait, and difficulty toe and

heel walking in May 2001, later reports revealed negative straight leg raise test, no trouble with toe and heel walking, and normal gait. In addition, recent tests showed only mild sensory abnormalities in the plaintiff's extremities.

While one physician opined that plaintiff had limitations in his ability to climb, kneel, crouch, crawl and stoop, the ALJ noted that plaintiff was able to work as a satellite installation service technician and was able to perform these activities. Further, plaintiff's physicians' assessment that plaintiff could only stand or walk for less than two hours and that he should never balance was inconsistent with their findings that plaintiff did not require a cane.

The ALJ also found that plaintiff lacked credibility because he was able to work after his alleged onset date. In addition, plaintiff visited with friends, which showed mobility, and he was able to vacuum, which demonstrated an ability to stand and walk for a considerable period. Further, plaintiff's hand numbness was intermittent, and plaintiff admitted an ability to lift 11 pounds. He also stated that a treating physician recommended that he exercise on a daily basis. The ALJ determined that plaintiff's primary aggravating factor was negligence in checking his blood-sugar levels and following a diabetic diet. With regard to use of a cane, the ALJ noted that such use was not recommended by plaintiff's physicians. The ALJ further pointed out

inconsistencies between plaintiff's testimony and his reports to physicians regarding his limitations. Although plaintiff earned $300.00 to $1,000.00 a week as a subcontractor for a cable company from 1997 to 1999, the ALJ noted that plaintiff did not report these earnings to the Social Security Administration. Thus, he did not contribute to the fund from which he sought to draw benefits.

The ALJ thus determined that plaintiff's allegations were not credible. He found that plaintiff had the RFC to perform sedentary work, except that he had only been able to walk two blocks at a time and stand for intervals of thirty minutes. Because plaintiff's past relevant work experience required more than sedentary exertional capacity, he was unable to perform his past relevant work since June 1, 2000. The ALJ relied on the VE testimony indicating that plaintiff could perform sedentary work as a dispatcher, order clerk/factory assembler, cashier, or general clerk. There were a significant number of such jobs in the national economy. Thus, the ALJ determined that plaintiff was not entitled to a Period of Disability, Disability Insurance Benefits, or Supplemental Security Income.

## Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the

Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## Discussion

The plaintiff argues that the ALJ erred by finding that he had the RFC to perform a full range of sedentary work activity because such conclusion was not based on medical evidence. Plaintiff also asserts that the ALJ improperly discredited his subjective complaints. Finally, plaintiff contends that the hypothetical question to the VE did not capture the concrete consequences of plaintiff's impairments. The defendant argues that the ALJ properly evaluated plaintiff's credibility and correctly determined

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

plaintiff's RFC.  In addition, defendant maintains that the hypothetical question to the VE properly set forth the impairments which the ALJ found credible.  Thus, the defendant asserts that the decision should be affirmed as it is supported by substantial evidence.

With regard to the issue of credibility, the Court finds that the ALJ properly discredited plaintiff's allegations of disability under <u>Polaski</u>.  First, the objective medical evidence did not support plaintiff's allegations.  While plaintiff's consultative physicians collectively indicated postural and environmental limitations, the ALJ found these opinions to be inconsistent with the medical record as a whole and with the physicians' own opinions.  Further, the report of a consulting physician who examined the plaintiff on only one occasion does not constitute substantial evidence, especially when plaintiff's treating physician contradicts that opinion.  <u>Cantrell v. Apfel</u>, 231 F.3d 1104, 1107 (8th Cir. 2000) (quotation omitted).  The medical evidence showed that plaintiff had only mild degenerative changes, improved lumbar range of motion, and only mild sensory abnormalities in Plaintiff's extremities.  Both consulting doctors noted that use of a cane was not medically required.  Further, plaintiff performed work with postural requirements despite his alleged impairment of obesity.  In addition, the records indicated that plaintiff's asthma was stable, and no treating physicians

placed any environmental restrictions on plaintiff.  Indeed, none of plaintiff's treating physicians placed any restrictions on him, and, instead, they encouraged him to increase his exercise.  Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (lack of significant restrictions placed by treating physicians is inconsistent with disabling pain).  Thus, the ALJ properly found that the medical evidence did not support plaintiff's allegations of disability.

In addition, the ALJ properly found that plaintiff's daily activities were inconsistent with his allegations.  Plaintiff testified that he performed household chores and visited with friends.  These activities are inconsistent with his allegations of disabling pain.  Gwanthey v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that plaintiff's ability to perform housework among other activities precluded a finding of disability).  While these activities alone may not constitute substantial evidence that plaintiff is not disabled, the ALJ may use these activities in conjunction with the lack of supporting medical evidence to discredit plaintiff's subjective complaints.  Kelley v. Callahan, 133 F.3d 583, 588-89 (8th Cir. 1998).

Further, the ALJ properly discredited plaintiff's allegations on the basis that plaintiff was non-compliant with prescribed treatment.  The ALJ pointed out, and the record supports, that plaintiff failed to follow his diabetic diet.  Indeed, plaintiff reported on several occasions that he ate ice cream, cake, and

fried foods, against medical advice.  Non-compliance with medical treatment is a proper basis for discrediting plaintiff's subjective complaints.  Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (failure to follow prescribed treatment without good reason is grounds for denying an application for disability benefits).  In short, the ALJ properly articulated inconsistencies in the record when discrediting plaintiff's subjective complaints.  Thus, substantial evidence supports the ALJ's determination that plaintiff's allegations of disabling pain were not credible.

Likewise, the ALJ properly determined that plaintiff possessed the RFC to perform sedentary work.  A claimant's RFC "is based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted).  As previously stated, the medical evidence did not support the limitations alleged by plaintiff.  In addition, plaintiff's own testimony supported the ALJ's RFC finding.  Plaintiff testified that he could lift 11 pounds, sit from 25 minutes to an hour, walk 2 blocks, and stand for up to 30 minutes.  The ALJ's RFC finding reflected plaintiff's descriptions of his own functional capacity.

In addition, none of plaintiff's treating physicians placed any restrictions on his activity, including postural or

environmental.  See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) (ALJ properly noted that medical professionals had not indicated that plaintiff was precluded from performing work).  To the contrary, plaintiff was urged to increase his exercise.  Further, treating physicians noted that Plaintiff's asthma was stable, his sleep apnea was controlled with the CPAP device, and his hypertension was controlled.  Impairments that can be controlled by treatment or medication cannot be considered disabling.  Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (citations omitted).  In addition, while plaintiff was obese, and medical professionals recommended weight loss, "none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions."  Forte, 377 F.3d at 896 (citation omitted).

The Court thus finds that the ALJ properly assessed plaintiff's RFC.  In doing so, the ALJ considered plaintiff's testimony of his symptoms and limitations, the medical evidence from treating physicians, and the opinions of the consulting physicians.  Brown v. Barnhart, 390 F.3d 535, 539 (8th Cir. 2004).  Therefore, substantial evidence supports the ALJ's determination that plaintiff possessed the RFC to perform sedentary work.

Finally, the plaintiff argues that the hypothetical question posed to the VE did not list all of plaintiff's impairments.  The

undersigned disagrees.    The ALJ need only include those work-related limitations he finds credible in the hypothetical question. <u>Forte</u>, 377 F.3d at 897 (citation omitted); <u>see also</u> <u>McKinney v. Apfel</u>, 228 F.3d 860, 865 (8th Cir. 2000) (hypothetical question only needs to include impairments that are supported by the record and that the ALJ accepts as valid).    In the instant case, the hypothetical question included the limitations of lifting no more than ten pounds, not walking more than two blocks at one time, and not standing for more than 30 minutes at a time.    The VE answered that there were a significant number of sedentary jobs in the national economy that plaintiff could perform.    As previously stated, the ALJ properly assessed plaintiff's credibility and determined Plaintiff's RFC based on substantial evidence in the record.    The hypothetical question contained only plaintiff's credible limitations and excluded those alleged impairments that the ALJ properly discredited.    Therefore, the hypothetical question was proper, and substantial evidence supports the ALJ's determination that plaintiff could perform work and was not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

_____
CAROL E. JACKSON

UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2005.